# IN THE COURT OF APPEALS OF IOWA

No. 19-2131
Filed July 1, 2020

IN THE INTEREST OF A.R.,
Minor Child,

L.F., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mary L. Timko, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Joseph W. Kertels of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by May, P.J., Greer, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**CARR, Senior Judge.**

A mother appeals the termination of her parental rights to her child. She contends there is insufficient evidence to support terminating her parental rights on any of the three grounds alleged by the State. She also contends termination is contrary to the child's best interests and asks us to not terminate her parental rights in light of the child's objection to termination. We review these claims de novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

As noted by the juvenile court, the family has a "significant and overwhelming history" of involvement with the Iowa Department of Human Services (DHS). That history began when the child was four months old; the child is now eleven years old. The only constant in the intervening decade of the child's life was instability, with the child placed in at least half a dozen foster homes while in and out of the parents' care due to concerns about their substance abuse, domestic violence, and lack of proper supervision. The child was most recently removed from the mother's care and adjudicated to be a child in need of assistance (CINA) in January 2019 after the mother allowed the father to care for the child while intoxicated. The mother was again abusing alcohol.

The State detailed the history of the family's involvement with the DHS in a forty-two page petition to terminate parental rights, filed in March 2019. The juvenile court terminated the father's parental rights to the child in its July 2019 order, but it granted the mother an additional six months to work toward reunification. The court noted that "[h]ad this child been a few years younger, a termination of [the mother's] parental rights would most certainly have been entered." But it declined to do so in light of the child's "propensity to sabotage

placement options" and the mother's possible interference with those placements, as well as the mother's recent actions to establish stability and maintain sobriety.

A trial home placement began with the mother at the end of July 2019. But the permanency hearing was moved up from its scheduled start in January 2020 to November 2019 after the State moved to terminate the trial home placement and expedite review due to concerns about the mother's mental health. In its December 2019 order, the juvenile court concluded:

> [G]iven the upheaval that occurred in [the child]'s life within 2 months of the entry of the permanency order being issued and the déjà vu nature of the past 3 months as compared to the life of the case, it appears that the only option available for [the child] is a termination of his mother's parental rights.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (i), and (*l*) (2019). We may affirm if any one of those grounds is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). Under section 232.116(1)(d), the court may terminate parental rights on clear and convincing evidence of the following:

> (1) The court has previously adjudicated the child to be a [CINA] after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a [CINA] after such a finding.
> (2) Subsequent to the [CINA] adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The mother challenges the sufficiency of the evidence showing the circumstance that led to the CINA adjudication continued to exist. She claims she

"made tremendous progress throughout the duration of juvenile court involvement, and maintained a level of sobriety, employment, and stability not present at the onset of the case." But that progress was made on the eve of the June 2019 termination hearing, with the juvenile court noting in its July 2019 order that "[p]erhaps the thought of actually losing [the child] forever was motivation enough for [the mother] to finally take sobriety seriously." Although the juvenile court agreed that the circumstances changed "somewhat" with the mother maintaining a period of sobriety, a stable home and employment, and consistent visitation with the child, it was unable to return the child to the mother's care "outright" because it needed to see an additional period of consistent sobriety before it could find the child could be safely returned to the mother's custody. The court also acknowledged that the mother appeared to be "on a positive trajectory" but asked, "[H]ow long can these positive behaviors last?"

Unfortunately, the answer to that question was less than two months. The mother lost her employment at the beginning of September 2019 because she was unable to do her job while managing the child's behaviors. From there, the situation deteriorated. By the end of October 2019, the mother appeared to be struggling with her mental health. She stopped taking her medication, which led to her hospitalization. She also admitted to flushing the child's medication down the toilet after a prescription was filled because she was concerned that she would be accused of taking it. By the time of the November 2019 hearing, the mother needed to address her mental health, housing stability, financial stability and substance abuse. In other words, any progress the mother had made was lost, and the circumstances that led to the CINA adjudication continued to exist.

Having found the evidence supports terminating the mother's parental rights under section 232.116(1)(d), we turn to the question of whether termination is in the child's best interests.  *See* Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).  In making this determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  The "defining elements" are the child's safety and "need for a permanent home."  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

The mother complains that "a conclusory statement that termination is not in the minor child's best interests does not meet the burden of clear and convincing evidence."  Although the court's ultimate conclusion that termination is in the child's best interests is made in one sentence, it is supported by the findings the court made leading up to it.  For eleven years, the child has been in and out of the mother's care and moved from one home to another.  This is antithetical to the child's best interests.  The child cannot be returned safely to the mother's care.  Given the child's safety and need for permanency, termination is in the child's best interests.

Finally, the mother asks us to not terminate her parental rights based on Iowa Code section 232.116(3)(b).  That section states that the court need not terminate parental rights if the child "is over ten years of age and objects to the termination."  Iowa Code § 232.116(3)(b).  But application of this provision is not mandatory.  *See A.S.*, 906 N.W.2d at 475.  Instead, we must decide whether to

terminate based on the facts of the case before us. *See id.* In light of the facts before us, we affirm the termination of the mother's parental rights.

**AFFIRMED.**